Ruben Serna
1510 S. New Hamshire Ave.
Los Angeles, CA 90006

Plaintiff in Pro Se

FILE ON DEMAND
FOR THE RECORD

FILED
CLERK, U.S. DISTRICT COURT

JUN 2 6 2014

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DICTRICT OF CALIFORNIA

Ruben Serna

       Plaintiffs,

          vs.

NDEX WEST LLC, PENNYMAC LOAN
SERVICES LLC and CITI MORTGAGE, INC.
and DOES 1-100, Inclusive

       Defendants

Case No: CV14-4985 SVW -PJW x

**VERIFIED ACTION-AT-LAW
VIOLATION OF FDCPA
(DEBT COLLECTOR)**
*15 U.S.C. 1692,et. Seq.*

**DEMAND TRIAL BY JURY**

## ABUSES IN MORTGAGE FORECLOSURE

Abuses in mortgage foreclosure process have been documented in previous
Decisions of the Court. *In In re Foreclosure Cases, 2007 WL 3232430 (N.D. Ohio October
31, 2007),* Judge Boyko found the foreclosure process was "**a quasi-monopolistic system**"
in which financial institutions, "**unchallenged by underfinanced opponents,**" disregard the
requirements of the judicial process and instead "**rush to foreclose, obtain a default
judgment and then sit on the deed, avoiding responsibility for maintaining the property**

1

**SERNA VS NDEX WEST, LLC**

PAID

JUN 2 6 2014

Clerk, US District Court
COURT 4612

1 while reaping the benefits of interest running on the judgment."

2

3            **DEFENDANTS CLAIMS AND FILINGS ARE VOID**

4 **PLAINTIFFS CASE IS BASED ON DEFENDANTS FILINGS AND CLAIMS THAT ARE**

5 **ALL VOID. THERE HAVE BEEN MANY LANDMARK CASES AGAINST ALLEGDED**

6 **LENDERS INVOLVED IN THE FORECLOSURE MILL WHICH HAS DESTROYED**

7 **OUR ECONOMY.  THIS IS WHY THE COURTS SHOULD HONOUR PLAINTIFFS**

8 **REQUEST FOR TRIAL BY JURY.**

9

10      **TO THE HONORABLE COURTS AND DEFENDANTS AND THEIR ATTORNEYS**

11              **FORGERY IS A CRIMINAL OFFENSE**

12     PLAINTIFF's Complaint is already material court admissible evidence in the instant record

13 that indicate major fraud, deceit, misrepresentation, and lack of full disclosure, specifically

14 related to false assignments, and false agencies, that are directly associated with criminal

15 forgeries by people with no personal knowledge, on documents purported to be knowingly,

16 willingly, and intentionally signed by high lending institution authority. It is also well

17 documented that these signatures have also been fraudulently notarized with criminal forgeries

18 by pretend notaries, who have witnessed absolutely nothing. This has been accomplished for the

19 sole purpose of creating a false public record supporting unjust enrichment to the opposition and

20 to separate a family from their living quarters of many years. Unless the **DEFENDANTS** and or

21 their Attorneys of record admit to these claims it will appear that counsel for the opposition is

22 attempting to mislead this Honorable court into becoming an accessory to the subject criminal

23 activity.

24     There is nothing in the instant record that would indicate that the undersigned has ever had a

25 valid contract with the opposition, or has borrowed anything from the opposition, or has made

26 any payments to the opposition, or has stopped making payments to the opposition. The

27 undersigned simply does not know who the opposition is.

28     To make matters worse for the opposition, there is also absolutely no court admissible

29 evidence in the instant record that would indicate that the opposition is a true holder in due

30 course of any original promissory note, mortgage, or deed of trust, properly endorsed, that is in

31 any way related to the subject private land and house, leaving the opposition with absolutely no

32

1  lawful standing to be in this court, and rendering all of their paperwork an attempted fraud upon
2  this Honorable court, and a sanctionable activity.

3      Due to the above-mentioned lack of lawful standing, the undersigned respectfully requests
4  this Honorable court to issue a quiet title against the opposition in favor of the undersigned.

5

6  **TO THE ATTORNEYS OF RECORD FOR DEFENDANTS**

7  While the supreme court has recently affirmed in *Cassel v. Superior Court, 51 Cal. 4th 113*
8  *(2011) where "[a]ll communications, negotiations, or settlement discussions by and between*
9  *participants in the course of a mediation...shall remain confidential.", now then, the ethics rule*
10 *in California dealing with lying is Rule of Professional Conduct 5-200, which provides that it is*
11 *improper to misrepresent a false statement of fact or law when presenting a matter within a*
12 *court-related context. This commandment is mirrored in Business and Professions Code Section*
13 *6068(d), which requires attorneys "to employ, for the purpose of maintaining the causes*
14 *confided to him or her means only as are consistent with truth, and never to seek to mislead the*
15 *judge or any judicial officer by an artifice or false statement of fact or law." Violators of Rule 5-*
16 *200 are subject to contempt of court in addition to discipline by the State Bar.*

17

18 **I.**

19 **INTRODUCTION**

20

21 .   Plaintiffs entered in a residential real estate purchase agreement with **THE ORIGNAL**
22 **LENDER CITICORP TRUST BANK on or about 07/28/2009 for the amount of**
23 **$171,560.28**, now the DEFEDNDANTS **NDEX WEST LLC, PENNYMAC LOAN**
24 **SERVICES LLC and CITI MORTGAGE, INC whom are DEBT COLLECTORS are**
25 Fraudulently claiming ownership of PLAINTIFF's property and proceeding with a Wrongful
26 foreclosure sale where DEFENDANTS failed to research title of the property and failed to
27 comply *to UCC 3-203* which states; This transaction is in violation under the provisions of the
28 Uniform Commercial Code UCC Article 3-203. **TRANSFER OF AN INSTRUMENT, THE**
29 **RIGHTS IS ACQUIRED BY TRANSFER:**

30     *(a) An instrument is transferred when it is delivered by a person other than its issuer for*
31 *the purpose of giving to the person receiving delivery the right to enforce.*

32

1   *(b)  Transfer of an instrument, whether or not the transfer is a negotiation, vests in the*
2   *transferee any right of the transferor to enforce the instrument including any right as a holder in*
3   *due course, but the transferee cannot acquire rights of a holder in due course by a transfer,*
4   *directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality*
5   *affecting the instrument; and in addition, Defendant allege that Plaintiff (s) had a fictitious*
6   *unauthorized signer known as Doe Defendant*

7

8                          **PRO SE STATUS OF PLAINTIFFS**

9       1.      PLAINTIFF has attempted to draft, file, and serve this ACTION-AT-LAW and
10  related Subject Matter Jurisdictional Challenge to the **DEFENDANTS**, according to
11  **PLAINTIFFs** best knowledge, information, and good-faith belief regarding his Unalienable
12  Rights as originally declared in the 1776 A.D. Unanimous Declaration of Independence, and as
13  later protected by the American Law of the Land and its Common-Law.

14      2.      **PLAINTIFF** sincerely believes that **PLAINTIFF** can justifiably rely, if necessary,
15  on the long held MAXIM OF LAW that clearly states: "Substance is more important than Form."

16      3.      **PLAINTIFF** also believes that **PLAINTIFF** can also justifiably rely on the UNITED
17  STATES SUPREME COURT Case, entitled, *Haines v. Kerner, 1972, 404 U.S. 519, 30.L. Ed. 2d*
18  *652, 92 S. Ct, 594, 496, Reh. Den., 405 U.S. 948, 30 L. Ed. 2d 918, 92 S, Ct, 963, which clearly*
19  *states, to wit:*

20          *"Pro Se complaints are held to less stringent standards than formal pleadings by*
21  *lawyers, and regardless of who represents the Plaintiffs, a motion to dismiss is not to be granted*
22  *unless it appears beyond doubt that the Plaintiffs can prove no set of facts which would entitle*
23  *them to relief."*

24

25                          **NATURE OF THIS ACTION-AT-LAW**

26  This is a complaint for money damages, Defendants **NDEX WEST LLC, PENNYMAC LOAN**
27  **SERVICES LLC and CITI MORTGAGE, INC** carefully conceived contrivance whereby thy
28  were assigned the debt  of a purported defaulted mortgage loan, under guise of an assignment of
29  Deed of Trust, and they erroneously foreclosed on Plaintiffs Property, and are attempting to
30  erroneously evict Plaintiffs from Plaintiffs property. The elaborate carefully conceived
31  contrivances carried out by Defendants with complicity of Defendants and their Attorneys were
32  either FALSE and misleading representation or unfair practices, and constitute violations of *15*

1  *U.S.C. 1692(e) & (f),* RESPECTIVELY. It should be noted that the Selling, Assigning, and or

2  Transferring of such Debt, Loan and or Promissory Note, without confirming any validity or

3  existence thereto, was effectuated previously thereto, concurrently therewith, and or subsequent

4  to the execution, creation or making of any of the **"Security, Secured Instruments"**, and or

5  **Deed of Trust"** as referenced herein, as follows;

6  First; From; CITICORP TRUST BANK

7      To;  CITI MORTGAGE, INC.

8  Second; From; CITI MORTGAGE, INC.

9      To; PENNYMAC LOAN SERVICES LLC

10  DEFENDANTS ARE DEBT COLLECTORS AND NEVER HAD ANY AUTHORITY TO

11  ASSIGN TRANSFER ANY RIGHTS AND OR TITLE OF PLAINTIFFS PROPERTY.

12  Defendants never produced any documentation that was acknowledged and duly recorded.

13

14                      **PARTIES**

15      1). Plaintiff **Ruben Serna**, (THEREINAFTER "Plaintiffs") was, and at all material times

16  mentioned in this complaint a resident of the County of **LOS ANGELES**, State of California.

17      2). At all relevant times **NDEX WEST LLC, PENNYMAC LOAN SERVICES LLC**

18  **and CITI MORTGAGE, INC** (thereinafter "Defendants") is a company who has transacted

19  business and/or or continues to transact business throughout the State of California, including

20  **LOS ANGELES** County under other names, through their named Co-Defendants and /or

21  through its affiliates

22

23                  **LEGAL FACTS**

24      3) **DEFENDANTS are a "Debt Collector"** within the meaning of *15 U.S.C. 160 ET.SEQ,*

25  and in particular, *15 U.S.C. Section 1692 a (6)* in that they used U.S. Mail in a business whose

26  primary purpose is the collection of debts.

27      4) Defendants were attempting to collect from Plaintiffs and alleged residential mortgage

28  debt since 2010, when they were **assigned** the purported debt *Please See Exhibit A.*

29      5) The alleged debt was incurred for personal, family or household purposes (to pay for

30          housing) and not for business purposes.

31

32                   **COUNTS**

### COUNT 1: Violation of 15 USC 1692(e)(2)(A) & (B)

6) Plaintiff incorporates by reference all the foregoing paragraphs.

7). This count is for violation of *15 USC 1692(e)(2)(A) & (B)*. This count consist of Plaintiffs and defendants

8). 15 USC *1692(e)(2)(A) & (B)* states;

    *(2) The false representation of-*

    *A. the character, amount, or legal status of any debt; or*

    *B. any services rendered or compensation which may be lawfully received by any*
    *debt collector for the collection of a debt.*

9). Defendants gave false representation in their letters and or notices as to the character and legal status of the debt, by implying they had the right to foreclose on Plaintiff's property, a security for the debt, rather than, upon information and belief, the debt being unsecured debt they obtained like all debt collectors do, at pennies on the dollar.

10). Defendants gave false representations in their letters and notices as to the services rendered by them acting as debt collectors, rather than what they erroneously purported to be, which creditors with the right to foreclose on property were.

11). Defendants violated *15 USC 1692(e)(2)(A) & (B)* by the misrepresentations in their letters and notices as to the character and legal status of the debt, and their services rendered.

12). Wherefore, the Plaintiffs demands;

    (a) statutory damages pursuant to *15 USC 1692(k)(a),* and

    (b) fees and cost pursuant to *15 USC 1692(k)(a).*

### COUNT 2: Violation of 15 USC 1692(e)(3)

13). Plaintiffs incorporate by reference all the foregoing paragraphs

14). This count is for violation of *15 USC 1692(e)(3)*. This count consist of Plaintiffs and Defendants

15). *15 USC 1692(e)(3)* states:

    *(3) The false representation of implication that any individual is an attorney or*
    *that any communication is from an attorney.*

16). Defendants in their letters and notices gave false implication that the letters were

from attorneys, because although many of the letters were on ( Law Firm) from Defendant letterhead, they were from an attorney, when an attorney never signed them.

17). Wherefore, the Plaintiffs demands;

    (a) statutory damages pursuant to *15 USC 1692(k)(a)*, and

    (b) fees and cost pursuant to *15 USC 1692(k)(a)*.

## COUNT 3: Violation of 15USC 1692 (c)(4)

18). Plaintiffs incorporate by reference all the foregoing paragraphs.

19). This count is for Violation *15 USC 1692 (e)(4)*. This count consist of Plaintiffs and Defendants.

20). *15 USC 1692 (e)(4)* states:

    *(4) The representation of implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.*

21). Defendants in their letters and notices gave the false representation that Plaintiff's property would be sold.

22). Defendants violated *15 USC 1692 (e)(4)* by the false representation that Plaintiffs property would be sold.

23). Wherefore, the Plaintiffs demands;

    (a) statutory damages pursuant to *15 USC 1692(k)(a)*, and

    (b) fees and cost pursuant to *15 USC 1692(k)(a)*.

## COUNT 4: Violation of 15 USC 1692 (e)(5)

24). Plaintiffs incorporate by reference all the foregoing paragraphs.

25).This count is in Violation *15 USC 1692 (e)(5)*. This count of Plaintiffs and Defendants.

26). *15 USC 1692 (e)(5)* states:

    *(5) The threat to take action that cannot legally be taken or that is not intended to be taken.*

7

SERNA VS NDEX WEST, LLC

27). Defendants in the letters and notices gave the threats that Plaintiffs property would be foreclosed, which is an action that cannot be taken by a debt collector.

28). Defendants violated *15 USC 1692 (e)(5)* by their threat given their letters and notices to foreclose, which is not legally possible for debt collectors.

29). Wherefore, the Plaintiffs demands;

(a) statutory damages pursuant to *15 USC 1692(k)(a),* and

(b) fees and cost pursuant to *15 USC 1692(k)(a).*

## COUNT 5: Violation of 15 USC 1692(e)(6)(B)

30). Plaintiffs incorporates by reference all the forgoing paragraphs.

31). This count is for violations of *15 USC 1692(e)(6)(B).* This count consist of Plaintiffs and defendants.

32). *15 USC 1692(e)(6)(B)* states:

*(6) The false representation or implication that a sale, referral, or other transfer of interest in a debt shall cause the consumer to-*

*(B) become subject to any practice prohibited by thus subchapter.*

33). Defendants assignment of debt gave the false implication that this **assignment of debt** would cause the consumer subject to foreclosure, which is prohibited by debt collectors. **Please See Exhibit A**

34). Defendants violated *15 USC 1692(e)(6)(B)* by giving false implication that this assignment of debt would cause the consumer/Plaintiffs to become subject to foreclose, which is prohibited by debt collectors.

35). Wherefore, the Plaintiffs demands;

(a) statutory damages pursuant to *15 USC 1692(k)(a),* and

(b) fees and cost pursuant to *15 USC 1692(k)(a).*

## COUNT 6: Violation of 15 USC 1692(e)(10)

36). Plaintiffs incorporates by reference all the forgoing paragraphs.

37). This count is for violations of 15 USC 1692(e)(10) This count consist of Plaintiffs and defendants.

38). *15 USC 1692(e)(10)* states:

   *(10) They use any false representation or deceptive means to collect or*
   *attempt to collect any debt or to obtain information concerning a*
   *consumer.*

39). Defendants sent Debt collector letters and notices requesting
   documentation and to fill out a financial worksheet, under the guise of
   working out a **Loan (Mortgage) modification,** but was really just a
   deceptive means to obtain information on consumer/Plaintiffs for the
   purpose of collecting a debt. ***Please See Exhibit B***

40). Defendants through their agents violated *15 USC 1692(e)(10)* by the use of
   deceptive means to obtain information to collect a debt concerning
   Plaintiffs.

41). Wherefore, the Plaintiffs demands;

   (a) statutory damages pursuant to *15 USC 1692(k)(a),* and
   (b) fees and cost pursuant to *15 USC 1692(k)(a).*

### COUNT 7: Violation of 15 USC 1692 (f)(1)

42). Plaintiffs incorporates by reference all the forgoing paragraphs.

43). This count is for violations of *15 USC 1692 (f)(1)* This count
   consist of Plaintiffs and defendants.

44). *15 USC 1692 (f)(1)* states:

   *(1) The collection of any amount (including any interest, fee, charge, or*
   *expense incidental of the principle obligation) unless such amount is*
   *expressly authorized by the agreement creating the debt or permissible by*
   *law.*

45). Defendants acting on behalf of Original Lender sent **debt collection letters,**
   attempting to collect unpaid interest, late charges, and inspection fees,
   which were incidental to the principle obligation. ***Please See Exhibit C***

46). Defendants through their agents violated *15 USC 1692 (f)(1)* by
   attempting to collect unpaid interest, late charges, and inspection fees,
   which were incidental to the principal obligation.

47). Wherefore, the Plaintiffs demands;

SERNA VS NDEX WEST, LLC

(a) statutory damages pursuant to *15 USC 1692(k)(a),* and

(b) fees and cost pursuant to *15 USC 1692(k)(a).*

### COUNT 8: Violation of 15 USC 1692(f)(6)(A)

48). Plaintiffs incorporates by reference all the forgoing paragraphs.

49). This count is for violations of *15 USC 1692(f)(6)(A)* This count
consist of Plaintiffs and defendants.

50). *15 USC 1692(f)(6)(A)* states:

*(6) Taking or threating to take any nonjudicial action to effect dispossession or*
*disablement of property if-*

*(A) there is no present right of possession of the property claimed as collateral*
*through an enforceable security interest;*

51). Defendants through their letters and notices threatened to take the nonjudicial
action of foreclosure against Plaintiff's property, and Defendants actually did
erroneously foreclosed on Plaintiff's property. There was no right to possession
of the property by defendants because the assignment was not of the **Deed of**
**Trust,** but of the debt., and the debt collectors have no right to foreclose, not to
mention the problem with the Deed of Trust not being recorded "properly"
because the Deed of Trust was defunct at the time of recording among other
major problems with the foreclosure process.

52). Defendants violated *15 USC 1692(f)(6)(A)* by threatening to take nonjudicial
action of foreclosure against Plaintiffs property when there was no right to
possession of the property by defendants because the assignment was not of the
Deed of Trust but of the debt, and the debt collectors have no right to foreclose,
among the many other issues.

53). Wherefore, the Plaintiffs demands;

(a) statutory damages pursuant to *15 USC 1692(k)(a),* and

(b) fees and cost pursuant to *15 USC 1692(k)(a).*

### COUNT 9: Violation of 15 USC 1692 (j)(a)

54). Plaintiffs incorporates by reference all the forgoing paragraphs.

55). This count is for violations of *15 USC 1692 (j)(a )* This count
consist of Plaintiffs and defendants.

**SERNA VS NDEX WEST, LLC**

56). *15 USC 1692 (j)(a)* states;

    (a) It is unlawful to design, complete, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

57). Defendants and their agents acting on behalf of the Original Lender sent the debt collection letter requesting documents and to fill out a financial worksheet, under the guise of working out a mortgage modification, but created the false belief in Plaintiffs mind that a person other than the creditor of Plaintiffs was participating in the collection.

58). Defendants through their agents violated *15 USC 1692 (j)(a)* by using the financial worksheet form that created the false belief in Plaintiff's mind that a person other than the creditor of plaintiffs was participating in the collection.

59). Wherefore, the Plaintiffs demands;

    (a) statutory damages pursuant to *15 USC 1692(k)(a),* and

    (b) fees and cost pursuant to *15 USC 1692(k)(a)*.

**FORGERY** BROUGHT TO THE FOREFRONT

VIOLATION OF CONDITION PRECEDENTS

**ASSIGNMENT OF DEED OF TRUST**

4.   PLAINTIFFS entered in an agreement with **CITICORP TRUST BANK,** in good faith in a promissory Note and **DEED OF TRUST.** Said **DEED OF TRUST** Section Titled **SALE OF NOTE; CHANGE OF LOAN SERVICER; NOTICE OF GRIEVANCE**; States, *The Note or a partial interest in the Note (Together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects servicing obligations under the NOTE and this Security Instrument and performs other mortgage loan servicing obligations under the Note, This Security Instrument, and applicable Law.* ***Please See Exhibit D***

11

**SERNA VS NDEX WEST, LLC**

i

## DEFENDANTS ARE IN VIOLATION OF ARTICLE 9-203(b)

*Section 9-203(b)* of the Uniform Commercial Code provides that three criteria must be fulfilled in order for the owner of a mortgage note effectively to create a "security interest" (either an interest in the note securing an obligation or the outright sale of the note to a buyer) in it.

•The first two criteria are straightforward – "value" must be given and the debtor/seller must have rights in the note or the power to transfer rights in the note to a third party.

•The third criterion may be fulfilled in either one of two ways. Either the debtor/seller must "authenticate" a "security agreement" that describes the note or the secured party must take possession of the note pursuant to the debtor's security agreement

*UCC § 9-203(b)(1). UCC § 1-204* provides that giving "value" for rights includes not only acquiring them for consideration but also acquiring them in return for a binding commitment to extend credit, as security for or in complete or partial satisfaction of a preexisting claim, or by accepting delivery of them under a preexisting contract for their purchase.

**DEFENDANTS FAILED TO COMPLY WITH DEFENDANTS ALLEDGED OBLIGATIONS AS A SERVICER AND OR LENDER.** DEFENDANTS filed FORGED and FRAUDULENT documents deceiving the courts and ALLEGED DEBTOR in order to FRAUDULENT START THE FORECLOSE PROCESS.

ii

## TECHNICAL VALIDITY OF THE SECURITY INSTRUMENT

*UCC § 9-102(a) (73)*

A *"security agreement"* is an agreement that creates or provides for a security interest (including the rights of a buyer arising upon the outright sale of a payment right

*§9-203(a): A security interest attaches when the security interest becomes enforceable*
*A security interest is attached when:*

        *(b)(1) Value has been given – i.e. money has been loaned*

        *(b)(2) The debtor has rights to the collateral*

        *(b)(3) The debtor has authenticated 9-102(a) (7) the security agreement (written security interest) – must have a description of the interest*

**SERNA VS NDEX WEST, LLC**

**Argument Brought to Forefront**

A) HOW CAN A DEBT COLLECTOR POSSESS THE PROMISSORY NOTE?

B) HOW CAN A DEBT COLLECTOR POSSESS THE DEED OF TRUST?

## FACT I

**NOT PROPERLY ASSIGNED FOR A PROPER FORECLOSURE SALE, SO**

**DEFENDANTS CLAIMS ARE VOID AND WITHOUT AUTHORITY.**

*Chapter 403. Uniform commercial code--negotiable instruments.*

403.301 Person entitled to enforce instrument.

### ENFORCEMENT OF INSTRUMENTS

*403.301 Person entitled to enforce instrument. "Person entitled to enforce" an instrument means the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument under s. 403.309 or 403.418 (4). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.*

**TRANSFER OF AN INSTRUMENT, THE RIGHTS IS ACQUIRED BY TRANSFER:**

*(a)   An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce.*

*(b)   Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument;  and in addition, Plaintiffs allege that Defendant(s) had a fictitious unauthorized signer known as Doe Defendant.  In order for this process to be lawful, the authorizing officer signing the document must have actual Corporate Authority, and said Corporation must have Power of Attorney to act on behalf of the Owner/Holder in order to have a lawful transfer.*

13

**SERNA VS NDEX WEST, LLC**

*LLP v. Sabine (8/2010) "the assignment produced by LPP is insufficient to demonstrate it has standing as (1)MERS has no ownership rights in the note and thus cannot assign it; (2) the language of the assignment of the mortgage does not evidence an intent to assign the underlying note, (3) the assignment arises out of a purchase agreement with an entity who is not a party to this action, and (4) the provision of mortgage document relied on by LPP does not give MERS the authority to assign the mortgage or the note.*

*Hawkins, Case No. BK-S-07-13593-LBR (Bankr.Nev. 3/31/2009) (Bankr.Nev., 2009) – "A "beneficiary" is defined as "one designated to benefit from an appointment, disposition, or assignment ... or to receive something as a result of a legal arrangement or instrument." BLACK'S LAW DICTIONARY 165 (8th ed. 2004). But it is obvious from the MERS' "Terms and Conditions" that MERS is not a beneficiary as it has no rights whatsoever to any payments, to any servicing rights, or to any of the properties secured by the loans. To reverse an old adage, if it doesn't walk like a duck, talks like a duck, and quacks like a duck, then it's not a duck."*

*Saxon vs Hillery, Dec 2008, Contra Costa County Superior Court, an action by Saxon to foreclose on a property by lawsuit was dismissed due to lack of legal standing. This was because the Note and the Deed of Trust was "owned" by separate entities. The Court ruled that when the Note and Deed of Trust were separated, the enforceability of the Note was negated until rejoined.*

## 1. MORTGAGE WITHOUT AN ENFORCEABLE RIGHT IS A LEGAL NULLITY.

Since the **DEED OF TRUST** had been assigned, in **CALIFORNIA** only the holder of the Note can initiate foreclose proceedings, regardless of who the mortgage is owed. *(See Adler v. Sargent (1895) 109 Cal. 42, 49).* A *"mortgagee's purported assignment of the mortgage without an assignment of the debt which is secured is a legal nullity*." *(Kelly v. Upshaw (1952) 39 Cal.2d 179, 192.)*

**Plaintiff** executed the Note and **DEED OF TRUST** in favor of **CITICORP TRUST BANK** more importantly; any assignment of the **DEED OF TRUST** to, without the Note would still render the **MORTGAGE** a legal nullity with no enforceable power of sale.

*Chapter 403. Uniform commercial code--negotiable instruments.*

14

**SERNA VS NDEX WEST, LLC**

*403.109 Payable to bearer or to order.*

**2. CREDITOR, HAS NO ENFORCEABLE RIGHT UNDER THE NOTE**

**3. CREDITOR, ISN'T THE HOLDER OF THE NOTE REQUIREMENTS.**

**4. CREDITOR, CAN ONLY ENFORCE THE NOTE IF IT MEETS THE**

**REQUIREMENTS OF EITHER** *Uniform Comm. Code § 3-309 or § 3-418(d). Uniform*

*Comm. Code § 3-309 states:*

*(A)     A person not in possession of an instruments entitled to enforce the instrument if (1) the*

*person was in possession of the instrument and entitled to enforce it when loss of possession*

*occurred, (2) the loss of possession was not the result of a transfer by the person or a lawful*

*seizure, and (3) the person cannot reasonably obtain possession of the instrument because the*

*instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful*

*possession of an unknown person or a person that cannot be found or is not amendable to*

*service of process.*

**5. DEFENDANTS, cannot meet either criterion, since DEFENDANTS, have never been**

**in possession of the Note in the first place, it cannot subsequently, establish a loss.**

The official *UCC commentary to Section 3-309 states that:*

*"Judgment to enforce the instrument cannot be given unless the court finds that the [plaintiffs]*

*will be adequately protected against a claim to the instrument by a holder that may appear at*

*some later time."*

**6. . DEFENDANTS HAVE NOT MADE THE REQUISITE SHOWING AND**

**PLAINTIFF MUST BE PROTECTED AGAINST A FUTURE CLAIMANT THAT MAY**

**APPEAR AT SOME LATER TIME.**

**7. DEFEDNANTS HAVE NO ENFORCEABLE RIGHT UNDER THE NOTE**

Accordingly, the power of sale may not be exercised by any third party, since there was never an

acknowledged and recorded assignment.

**8. THE COURT SHOULD HALT THE FORECLOSURE SALE AND EVICTION**

**PROCEEDINGS BECAUSE A GENUINE DISPUTE EXISTS**

**10. THE COURT SHOULD NOT PERMIT FORECLOSURE OR EVICTION IF ITS**

**PROPRIETY IS IN QUESTION.**

1    The Supreme court in *More v. Calkins (1895) 84 Cal. 177* held that a sale under foreclosure

2    ought not to be made when the debt is uncertain or in dispute.

3    This is still true today as the Court in *Baypoint Mortgage Corp. v. Crest Premium Real Estate*

4    *etc., Trust  (1985) 168 Cal.App.3d 818 [214 Cal.Rptr.3d 531] noted "Given the drastic*

5    *implications of a foreclosure, it is not surprising to find courts quite frequently granting*

6    *preliminary injunctions to forestall this remedy while the court considers a case testing whether*

7    *it is justified under the facts and law." (See, e.g., Stockton v. Newman (1957) Cal.App.2d 558*

8    *[307 P2d. 56]; Bisno v. Sax (1959) 175 CaLApp2d 714 [346 P2.d .S14].)*

9

10    **PLAINTIFF's likelihood of prevailing at trial is substantially assured.**  If the foreclosure

11    and Eviction Process is not immediately reversed, **PLAINTIFFS** will lose their home - a loss

12    which is irreparable and cannot be adequately compensated for by money.

13    Therefore, **PLAINTIFFS** seeks, through their Action-At-Law, an order from this Court

14    enjoining **Defendants** from proceeding with an eviction on Plaintiffs home in any manner during

15    the pendency of this litigation.

16

17                                                **V.**

18                                        **CONCLUSION**

19

20        **DEFENDANTS** are an unknown third party **DEBT COLLECTOR** without any

21    enforceable right to foreclose on **PLAINTIFF 'S** home.  It can show no interest whatsoever in

22    the Note and thus is precluded from a foreclosing under **CALIFORNIA** Laws.  The title must be

23    **DULY PERFECTED,** in this case the title was not Duly Perfected and was foreclosed upon in

24    Violation of **CALIFORNIA FORECLOSURE LAWS.**

25

26        If the WRONGFUL EVICTION proceeds, **PLAINTIFFS** losses will be irreparable and

27    cannot be adequately compensated by money.

28        **PLAINTIFF** respectfully request an **INJUNCTION** prohibiting **DEFENDANTS** and their

29    agents and assigns, from EVICTION PROCESS AND A WRONGFUL FORECLOSURE sale

30    on **PLAINTIFFS** property in any way.

31

32                                    **PLAINTIFF'S PRAYER**

SERNA VS NDEX WEST, LLC

1. For a decree and order determining and Granting **PLAINTIFFS REQUEST ENJOINING OF DEFENDANTS** for and to the benefit of PLAINTIFF'S, as to the "*In Rem*" Property, and as against any and all of DEFEDNANTS hereto and to any "Adverse Claims", they allege to possess herein:

2. The Judicial Declaration be entered and each of them be declared to have no interest either Legal or Equitable, right, estate, or lien in subject Property and that the DEFENDANTS, their agents or Assigns, be forever enjoined from asserting estate, right, title or interest to subject property.

3. That each and every Party herein be Specifically Ordered to Perform and effectuate a full Conveyance of any and all relative "Security", Secured Instruments and or "DEED OF TRUST"

4. For such reasonable cost of suit.

DATED June 25, 2014

Respectfully

Ruben Serna
PLAINTIFF in Pro Se

17

SERNA VS NDEX WEST, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

# EXHIBIT A

18

SERNA VS NDEX WEST, LLC



**This page is part of your document - DO NOT DISCARD**

# 20100503582

 

Pages:
0002

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**04/14/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**LEADSHEET**



201004140110005

00002213762


002632420

**SEQ:**
**16**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

t29

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE COMPANY
Recording Requested by: Orion Financial Group, Inc.

PLEASE FORWARD RECORDED DOCUMENT TO:
CITIMORTGAGE, INC.
c/o Orion Financial Group, Inc.
2860 Exchange Blvd. # 100
Southlake, TX 76092

Ч3933Я2  ЧC



04/14/2010
*20100503582*

**Assignment of Deed of Trust**          Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **CITICORP TRUST BANK, FSB  354-356 South Decatur, Las Vegas, NV 89107 (Assignor)** by these presents does assign and set over, without recourse, to **CITIMORTGAGE, INC.  4050 Regent Blvd, Mail Stop N2A-222, Irving, TX 75063 (Assignee)** the described deed of trust, together with certain note(s) described with all interest, all liens, any rights due or to become due thereon, executed by **RUBEN SERNA, A MARRIED MAN AS HIS SOLE AND SEPERATE PROPERTY** to CITICORP TRUST BANK, FSB.    Said deed of trust **Dated: 7/19/2009** is recorded in the **State of CA, County of Los Angeles on 7/28/2009, Document 20091150891 AMOUNT: $ 171,560.28**    Property Address: 1510 S NEDW HAMPSHIRE AVE, LOS ANGELES, CA  90006

IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed as a sealed instrument by its proper officer.  Executed on:  April 6, 2010

CITICORP TRUST BANK, FSB

By:

D. M. Wileman, Vice President

SERNA   SJR  *01205522*

State of Texas, County of Tarrant
      Before me, J. Flores, Notary Public, personally appeared, D. M. Wileman, Vice President known to me to be the person(s) whose name(s) is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Given under my hand and seal of office on 4/6/2010.

J. FLORES
Notary Public, State of Texas
My Commission Expires
October 28, 2013

Notary public, J. Flores
My commission expires: October 28, 2013

CA  Los Angeles

CA-10-346908-AB
AHESFIP/MCCART/AHE

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink.
of the Registrar-Recorder/County Clerk

JAN 1 6 2014

*Dean C. Logan* REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA



**This page is part of your document - DO NOT DISCARD**



## 20110152155



**Pages:**
**0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**01/27/11 AT 11:42AM**

| | | |
|---|---|---|
| FEES: | | 18.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 18.00 |



**L E A D S H E E T**



201101270800072

00003663463



003124237

**SEQ:**
**01**

**DAR - Mail (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

2

Recording Requested by: Orion Financial Group, Inc.

PLEASE FORWARD RECORDED DOCUMENT TO:
PENNYMAC CORP.
c/o Orion Financial Group, Inc.
2860 Exchange Blvd. # 100
Southlake, TX 76092



01/27/2011

*20110152155*

---

### Assignment of Deed of Trust          Send Any Notices To Assignee.

---

For Valuable Consideration, the undersigned, **CITIMORTGAGE, INC. 4050 REGENT BLVD, MAIL STOP N2A-222, IRVING, TX 75063 (Assignor)** by these presents does assign and set over, without recourse, to **PENNYMAC CORP. 27001 Agoura Road, Calabasas, CA 91301 (Assignee)** the described deed of trust, together with certain note(s) described with all interest, all liens, any rights due or to become due thereon, executed by **RUBEN SERNA, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY** to CITICORP TRUST BANK, FSB.    Said deed of trust **Dated: 7/17/2009** is recorded in the State of CA, County of Los Angeles on 7/28/2009, Document 200091150891 AMOUNT: $ 171,560.28    Property Address: 1510 SOUTH NEW HAMPSHIRE AVENUE, LOS ANGELES, CA 90006-4512

IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed as a sealed instrument by its proper officer.  Executed on:  January 6, 2011
CITIMORTGAGE, INC.

By: _____

    M. E. Wileman, Vice President

SERNA  OFG4  *10064173*

State of Texas, County of Tarrant
        Before me, J. Flores, Notary Public, personally appeared, M. E. Wileman, Vice President known to me to be the person(s) whose name(s) is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Given under my hand and seal of office on 01/06/2011.

                                        Notary public, J. Flores
                                        My commission expires: October 28, 2013

J. FLORES
Notary Public, State of Texas
My Commission Expires
October 28, 2013

CA   Los Angeles                        CITICAP/WL101/PENMAC

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

SEP 25 2012

Dean C. Logan   REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

REGISTRAR-RECORDER/COUNTY CLERK
COUNTY OF LOS ANGELES · CALIFORNIA

**This page is part of your document - DO NOT DISCARD**

# 20120605448



**Pages:
0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**04/24/12 AT 08:00AM**

| FEES: | 21.00 |
|---|---|
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201204240150012

**00005700463**



003944112

**SEQ:
03**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t35

Recording requested by:

When recorded mail to:

Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711

04/24/2012

*20120605448*

TS No.. **CA-12-501232-EV**
Order No.. **120070021-CA-GTI**

Space above this line for recorders use

# Substitution of Trustee

WHEREAS, **RUBEN SERNA , A MARRIED MAN AS HIS SOLE AND SEPERATE PROPERTY** was the original Trustor, **VERDUGO TRUSTEE SERVICE CORPORATION** was the original Trustee, and **CITICORP TRUST BANK, FSB** was the original Beneficiary under that certain Deed of Trust dated **7/17/2009** and recorded on **7/28/2009** as Instrument No. **20091150891,** of Official Records of **LOS ANGELES** County, **CA**; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and stead of said original Trustee, or Successor Trustee, thereunder, in the manner provided for in said Deed of Trust,

NOW, THEREFORE, the undersigned hereby substitutes **QUALITY LOAN SERVICE CORPORATION** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

3-55

TS No.: **CA-12-501232-EV**
Page 2

PennyMac Corp.

By: _____
Javier Huancas

Government Default Supervisor

State of _____**California**____ )

County of: _____**Ventura**_____ )

On this ___**APR 1 3 2012**___ before me _____**Diana V Ramos**_____ a notary public personally appeared _____**Javier Huancas**_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under *PENALTY OF PERJURY* under the laws of the state of ____**California**____ that the foregoing paragraph is true and correct.

*Witness* my hand and official seal.

_____)(NOTARY SEAL)
Signature

DIANA V. RAMOS
Commission # 1947285
Notary Public - California
Los Angeles County
My Comm. Expires Aug 7, 2015

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

JAN 1 6 2014

*Dean C. Logan* REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA



**This page is part of your document - DO NOT DISCARD**



# 20131008914



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**07/10/13 AT 08:00AM**

| | | |
|---|---|---|
| FEES: | | 21.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 21.00 |



**L E A D S H E E T**



201307100160003

00007979634



004985808

**SEQ:**
**01**

**ERDS - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

E09

Recording requested by:
**STEWART TITLE OF CALIFORNIA, INC.**

When Recorded Mail To:
**NDEx West, L.L.C.**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas  75001-9013**

APN #: 5075-002-013
Property Address:
**1510 S NEW HAMPSHIRE AVE**
**LOS ANGELES, CALIFORNIA  90006**

**\*SUB201302022**
**00020\***

Space above this line for Recorder's use only

Trustee Sale No. : **20130202200039** Title Order No.: **01180-32378**

# SUBSTITUTION OF TRUSTEE

WHEREAS, **RUBEN SERNA, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERY** was the original Trustor, **VERDUGO TRUSTEE SERVICE CORPORATION** was the original Trustee, and **CITICORP TRUST BANK, FSB** was the original Beneficiary **Recorded on 07/28/2009 as Instrument No. 20091150891** of official records in the Office of the Recorder of Los Angeles County, **California**, as more fully described on said Deed of Trust.; and WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said prior Trustee.

NOW, THEREFORE, the undersigned hereby substitutes, **NDEx West, L.L.C., WHOSE ADDRESS IS:  15000 Surveyor Boulevard, Suite 500, Addison, Texas  75001-9013**, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.                                                    PENNYMAC, CORP. BY PENNYMAC LOAN SERVICES, LLC, ITS
                                                                                   ATTORNEY IN FACT

DATED: 1/21/13

_____

                                                                                   **Christopher Santana**
State of  _____  }                    **Authorized Representative**
County of  _____  }

                                        SEE ATTACHMENT

On _____ before me, _____ , Notary Public, personally
appeared _____ who is known to me to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____(Seal)

My commission expires: _____

FCUS  SubstituteOfTrustee M.rpt - 08/12/2010 - Ver 15                                                        Page 1 of 1

# ACKNOWLEDGMENT

State of California
County of _____ Ventura _____ )

On _JUNE 26, 2013_ before me, __Frank Michael Hoff, Notary Public__
(insert name and title of the officer)

personally appeared _____ Christopher Santana _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

FRANK MICHAEL HOFF
Commission # 1922566
Notary Public - California
Los Angeles County
My Comm. Expires Jan 21, 2015

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

JAN 1 6 2014

Dean C. Logan REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

# EXHIBIT B

19

**SERNA VS NDEX WEST, LLC**

## Karla Ruiz

| | |
|---|---|
| From: | Karla Ruiz <Karla@jackharriman.com> |
| Sent: | Monday, May 07, 2012 10:02 AM |
| To: | 'Xochitl Serna' |
| Cc: | nova@jackharriman.com; Brittany Jones  (Brittany@jackharriman.com) |
| Subject: | Loan Modification Needed Items - Ruben Serna |
| Attachments: | LOAN MODIFICATION CHECK LIST.pdf; SKMBT_C35312050709000.pdf; SKMBT_C35312050709030.pdf |

Hello Xochitl,

Thank you for your prompt response. I just got your dads signed letter. Please advise him the he request has been faxed to the lender.

There are a few items we will need from your dad to start the loan modification process. Please see attached:

1. Loan Modification Checklist
2. Penny Mac needed documentation – Doesn't have to be filled out. Please just sign
3. Household Expenses & Credit Card Expenses- Please complete this form

Please contact me if you have any questions on the above needed items.

Thank you so much,


Karla S. Vasquez
Transaction Coordinator/Loan Processor
Jack Harriman and Associates
216 West Foothill Blvd.
Monrovia, CA 91016
Main: 626.256.8888
EFax: 626.263-5185


*Jack Harriman & Associates*
REAL ESTATE • MORTGAGE • FINANCIAL PLANNING


CONFIDENTIALITY NOTICE: This communication and any documents attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 USCA 2510. This communication may contain non-public, confidential, or legally privileged information intended for the sole use of the designated recipient(s).  The unlawful interception, use or disclosure of such information is strictly prohibited under 18 USCA 2511 and any applicable laws.  If you are not the intended recipient, or have received this communication in error, please notify the sender immediately and destroy all copies of this communication, including attachments, without reading, copying or saving in part or whole in any manner including, but not limited to electronic, film media, or print. The contents must not be at anytime in part or whole used as a basis or any financial transaction of any kind. Neither this email nor any email from Jack Harriman and Associates shall constitute an agreement to any terms, solicitation, approval, denial or contract

1

FAX

*Jack Harriman & Associates*
REAL ESTATE · MORTGAGE · FINANCIAL PLANNING

Jack Harriman and Associates
216 West Foothill Blvd.
Monrovia, CA  91016

Main: 626-256-8888
Fax 626-256-8887

| TO: | Penny Mac | FROM: | JACK HARRIMAN |
| FAX: | 866-877-7205 | PAGES: | 5 |
| PHONE: | | DATE: | 9/3/12 |
| RE: | SERNA MOD. | BORROWER: | SERNA |

X URGENT     X FOR REVIEW     ☐ PLEASE COMMENT     X PLEASE REPLY

Penny Mac —
Please see attached Third Party Authorization forms
for loan # 1000030810 / SERNA.

Thank You,

Jack Harriman
&
Associates



Loan Administration
P.O.Box 514387
Los Angeles, CA 90051-4387
(866) 545-9070
*fax* (866) 577-7205
www.pennymacusa.com

### Third Party Authorization Request Form

In order to release your confidential account information to the individual(s) or company you are authorizing, the below information must be completed and returned to our contact information above. Once received, please allow 24 hours for processing.

**Borrower Information:**

Name: _Ruben Serna_

Account Number: _1000030810_

Signature: _Ruben J. Serna_

### Authorized Party Information

Name: _Jack Harriman — Jack Harriman & Associates_

Address: _216 W. Foothill Blvd. Monrovia, CA 9016_

\*This authorization will remain on your account. Should you wish to revoke this authorization, please submit your request in writing to our contact information above.\*

*This is an attempt to collect a debt and any information obtained will be used for that purpose.*



Loan Administration
P.O.Box 514387
Los Angeles, CA 90051-4387
(866) 545-9070
*fax* (866) 577-7205
www.pennymacusa.com

### Third Party Authorization Request Form

In order to release your confidential account information to the individual(s) or company you are authorizing, the below information must be completed and returned to our contact information above. Once received, please allow 24 hours for processing.

**Borrower Information:**

Name: _Ruben Serna_

Account Number: _1000030810_

Signature: _Ruben F. Serna_

### Authorized Party Information

Name: _Karla Ruiz - Jack Harriman & Associates_

Address: _216 W. Foothill Blvd. Monrovia, CA 91016_

*This authorization will remain on your account. Should you wish to revoke this authorization, please submit your request in writing to our contact information above.*

*This is an attempt to collect a debt and any information obtained will be used for that purpose.*



**PennyMac®**
PennyMac Loan Services, LLC

Loan Administration
P.O.Box 514387
Los Angeles, CA 90051-4387
(866) 545-9070
fax (866) 577-7205
www.pennymacusa.com

### Third Party Authorization Request Form

In order to release your confidential account information to the individual(s) or company you are authorizing, the below information must be completed and returned to our contact information above. Once received, please allow 24 hours for processing.

**Borrower Information:**

Name: _Ruben Serna_

Account Number: _1000030810_

Signature: _Ruben F. Serna_

### Authorized Party Information

Name: _Nova Raven - Jack Harriman & Associates_

Address: _216 W. Foothill Blvd. Monrovia, CA 91016_

*This authorization will remain on your account. Should you wish to revoke this authorization, please submit your request in writing to our contact information above.*

*This is an attempt to collect a debt and any information obtained will be used for that purpose.*



PennyMac®
PennyMac Loan Services, LLC

Loan Administration
P.O.Box 514387
Los Angeles, CA 90051-4387
(866) 545-9070
*fax* (866) 577-7205
www.pennymacusa.com

## Third Party Authorization Request Form

In order to release your confidential account information to the individual(s) or company you are authorizing, the below information must be completed and returned to our contact information above. Once received, please allow 24 hours for processing.

**Borrower Information:**

Name: Ruben Serna

Account Number: 1000030810

Signature: *Ruben F. Serna*

### Authorized Party Information

Name: Britany Jones - Jack Harriman & Associates

Address: 216 W. Foothill Blvd. Monrovia, CA 91016

*This authorization will remain on your account. Should you wish to revoke this authorization, please submit your request in writing to our contact information above.*

*This is an attempt to collect a debt and any information obtained will be used for that purpose.*

Home Phone # 213-467-5613
Last 4 of SS # ▮▮▮▮
Borrower Name: Ruben Serna
Property Address: 1510 S. New Hampshire Ave, Los Angeles, CA 90006.
Borrower Contact #: 213-700-8650
Daughter Sochi: 818-425-4059 ✶

Lender Name: Penny Mac
Loan Number: 1000030810
Lender Number: 866-545-9070

Sale date is
4/20/12

From Jack harriman
offices.

**CALL LOG**

5/3/12 - Faxed Third Party Auth. forms to Penny Mac.
5/3/12   Maria - 4115 - (24-48 hours turnaround
time for auth.)
• 7am team.
5/7/12 - Email Xochitl with needed items for modification.
also emailed the revoke letter to pennymac.
5/7/12 - David - X=8559.
Active forclosue - no sale date. No
modification attemps at all w/ pennymae.
- ASK about P.O. Box
- Bankrupcy - August of 2011 - Both names.
- Family First Home Services. May 24, 2011.
- No modification = only repayment plan.
- Mod w/ Citi once it went to Penny they
gave up.
- Feb 22  some calleed ⎤
- March 8  some calleed ⎬ 2011
- May 24  last calleed ⎦
   ✶ Income & Expensi - Gross income.
Loan Modification Needed  S) Call back and they will see what
program they will qualify for or
what they want to achieve.
5/10/12 - Waiting on Documentation from the borrower.
6/25/12 - Frank no sale date.
7/16/12 - Spoke with lender and borrowers
% is 39% and does not qualify for loan mod.

Need to speak with daughter regarding
income.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

# EXHIBIT C

SERNA VS NDEX WEST, LLC

# NDeX

EXPERIENCE | SERVICE | RESULTS

15000 Surveyor Blvd.
Addison, TX 75001
Phone: 866-795-1852
Fax: 972-661-7800

*NDEX, LLC, MAY be Acting AS A debT Collector*

June 5, 2013

Ruben Serna
1510 S. New Hampshire Avenue
Los Angeles, CA 90006

Re:      Mortgagor:                 Ruben Serna
         Loan Number:               1000030810
         Trustee Sale Number:       20130202200039
         Property Address:          1510 S. New Hampshire Avenue
                                    Los Angeles, CA 90006

Dear Mr. Serna:

   We are in receipt of your correspondence regarding the verification of your debt with Pennymac Loan Services, LLC.  Please find enclosed an executed Deed of Trust, Assignment, and Promissory Note which will serve as proof of the validity of the debt.  Please note that the name and address of the original creditor can be found on the Deed of Trust.

   If you would like to speak with someone about payment options, you may contact the Loss Mitigation Department at (866) 695-4122.  If you have any further questions, please do not hesitate to contact this office.

Sincerely,

Cheryl Asher
General Counsel

Enclosures
CA/rp.

   **The Fair Debt Collection Act requires that we advise you that NDeX, LLC, may be acting as a debt collector,** attempting to collect a debt.  Any information obtained will be used for that purpose.



**NDeX**

EXPERIENCE | SERVICE | RESULTS

15000 Surveyor Blvd.
Addison, TX 75001
Phone: 866-795-1852
Fax: 972-661-7800

December 4, 2013

Ruben Serna and Candida Serna
1510 S. New Hampshire Avenue
Los Angeles, CA 90006

Re:       Mortgagor:              Ruben Serna and Candida Serna
          Loan Number:            1000030810
          Trustee Sale Number:    20130202200039
          Property Address:       1510 S. New Hampshire Avenue
                                  Los Angeles, CA 90006

Dear Mr. and Mrs. Serna:

We are in receipt of your correspondence, regarding your request for loss mitigation. However, these requests are not handled by our office. Loss mitigation requests should be sent directly to your client's loan servicer rather than to NDeX. We are only authorized to cancel or postpone our scheduled sale at Pennymac Loan Services, LLC's request. *So Pretender Lender calling the shots.*

If you would like to speak with someone about payment options, you may contact the Loss Mitigation Department at (866) 695-4122.

If you have any further questions, please do not hesitate to contact this office.

Sincerely,

*Atty or Maybe an Attorney? with BDF Law Group - July 2009 - Present, they Acquired NDeX West LLC in Sept. 2008*

Clayton Goff
General Counsel

CG/rp

*Either you are a Debt Collector or you are not which is it?*

**THE FAIR DEBT COLLECTION ACT REQUIRES THAT WE ADVISE YOU THAT NDEX, LLC, MAY BE ACTING AS A DEBT COLLECTOR, ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**NDeX WEST, L.L.C.**
15000 Surveyor Boulevard
Suite 500
Addison, TX 75001-9013



US POSTAGE
FIRST-CLASS MAIL
ZIP 75001  4/24/2013   HASLER

$0.46⁰


019H13101198

12791468

20130202200039

RUBEN SERNA
1510 S NEW HAMPSHIRE AVE
LOS ANGELES, CA  90006

# IMPORTANT INFORMATION IS CONTAINED
# WITHIN THE ATTACHED NOTICE.

# PLEASE  READ  CAREFULLY

# NDEX WEST, L.L.C. MAY BE A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

04_01_CA N Y

HP

**NDEx West, L.L.C.**
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
Telephone: (866) 795-1852
Telecopier: (972) 661-7800

*NDEx MAY BE CONSidERED A DebT Collector?*

April 24, 2013

**RUBEN SERNA**
**1510 S NEW HAMPSHIRE AVE**
**LOS ANGELES, CA  90006**

Re:  Loan No.:        1000030810
TS No.:        20130202200039

NDEx West, L.L.C. ("NDEx") has been authorized by the Servicer/Creditor to initiate foreclosure of a Deed of Trust associated with a real property loan.   The current creditor to whom the Debt is owed is **PENNYMAC CORP.**. The loan is being serviced by **PENNYMAC LOAN SERVICES, LLC** .

We have been advised by our client that the amount of the debt as of the date of this Notice according to the records of our client is $233,524.40 .  Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater.  If you pay the amount shown above, an adjustment may be necessary after we receive your check, in which case we will inform you before depositing the check for collection. For further information, write the undersigned or call (866) 795-1852.

**PLEASE BE ADVISED THAT NDEx MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT THE ABOVE REFERENCED DEBT. ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE.**

Unless, within thirty days after you receive this letter you dispute the validity of the Debt or any part of it, NDEx will assume that the debt is valid. If you notify NDEx in writing within that same thirty-day period that the debt, or any portion thereof, is disputed NDEx will obtain verification of the Debt or a copy of a judgment, if any, and a copy of such verification or judgment will be mailed to you Upon your written request within that same thirty-day period NDEx will furnish you with the name and address of the original creditor, if the original creditor is different from the current creditor.

The law does not require NDEx to wait until the end of the thirty-day period before taking action to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within thirty days of receipt of this letter, the law requires NDEx to suspend its efforts (through litigation or otherwise) to collect the debt, even if we have already initiated foreclosure proceedings, until we mail you the information validating the debt and/or until we provide you with the name and address of the original creditor.

The California Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt.  Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

If you are not obligated on the Debt, or if the Debt has been discharged in a bankruptcy proceeding, this letter is not an attempt to impose personal liability upon you for payment of that debt.  In the event you have received a bankruptcy discharge, any action to enforce the debt will be taken against the property only.  You are being given this notice as a courtesy because your interest in the property loan may be affected.

Sincerely,

Chris Baca
NDEx West, L.L.C.

**NDeX WEST, L.L.C.**
15000 Surveyor Boulevard
Suite 500
Addison, TX 75001-9013

US POSTAGE
**FIRST-CLASS MAIL**
ZIP 75001  6/9/2014     HASLER     $1.40⁰    

019H13101335

13675314

20130202200039

RUBEN SERNA
1510 S NEW HAMPSHIRE AVE
LOS ANGELES, CA 90006

# IMPORTANT INFORMATION IS CONTAINED WITHIN THE ATTACHED NOTICE.

# PLEASE  READ  CAREFULLY

# NDEX WEST, L.L.C. MAY BE A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

04_01 CA N Y

HP

FCUS_Std_Banner_Portrait_DocGen_HP.rpt - (10/14/2011) / Ver-07

Recording requested by:
STEWART TITLE OF CALIFORNIA, INC.

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852

APN #: 5075-002-013
Property Address:
1510 S NEW HAMPSHIRE AVE
LOS ANGELES, CALIFORNIA 90006

NOTS20130202200039

COPY of Document Recorded
at **Los Angeles** County Recorder
**20140570118**        **06/03/2014**
has not been compared with original.
Original will be returned when process
has been completed.

Fee: **25.00**   DTT   **0.00**   Total   **25.00**

Space above this line for Recorder's use only

Trustee Sale No. : 20130202200039          Title Order No.: 01180-32378          FHA/VA/PMI No.: 0

## NOTICE OF TRUSTEE'S SALE

**ATTENTION RECORDER:** THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY APPLIES ONLY TO COPIES PROVIDED TO THE TRUSTOR, NOT TO THIS RECORDED ORIGINAL NOTICE.

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**
**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**
**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY**

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 07/17/2009. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

NDEx West, L.L.C., as duly appointed Trustee under and pursuant to Deed of Trust **Recorded on 07/28/2009 as Instrument No. 20091150891** of official records in the office of the County Recorder of LOS ANGELES County, State of CALIFORNIA.
EXECUTED BY:      **RUBEN SERNA,**
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by California Civil Code 2924h(b). (payable at time of sale in lawful money of the United States).
DATE OF SALE:      **06/30/2014**      TIME OF SALE:      **10:00 AM**
PLACE OF SALE:      BEHIND THE FOUNTAIN LOCATED IN CIVIC CENTER PLAZA, 400 CIVIC CENTER PLAZA, POMONA CA.
STREET ADDRESS and other common designation, if any, of the real property described above is purported to be:
      **1510 S NEW HAMPSHIRE AVE, LOS ANGELES, CALIFORNIA 90006**
APN#:      **5075-002-013**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of

FCUS_NoticeOfTrusteeSale.rpt - Record - 05/29/2013 - Ver-38                                                                     Page 1 of 2

Trustee Sale No. : 20130202200039        Title Order No.: 01180-32378        FHA/VA/PMI No.: 0

Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is **$254,772.41**. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 916-939-0772 for information regarding the trustee's sale or visit this Internet Web site www.nationwideposting.com for information regarding the sale of this property, using the file number assigned to this case 20130202200039. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
NATIONWIDE POSTING & PUBLICATION A DIVISION
OF FIRST AMERICAN TITLE INSURANCE COMPANY
5005 WINDPLAY DRIVE, SUITE 1
EL DORADO HILLS, CA 95762-9334
916-939-0772
www.nationwideposting.com

NDEx West, L.L.C. as Trustee

BY: Ric Juarez      Associate Director

NDEx West, L.L.C. MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Dated: **05/30/2014**

NOTICE OF SALE
SUMMARY OF KEY INFORMATION

The attached notice of sale was sent to  RUBEN SERNA , in relation
(trustor)
to  1510 S NEW HAMPSHIRE AVE, LOS ANGELES, CALIFORNIA 90006 .
(description of property that secures the mortgage or deed of trust in default.)

YOU ARE IN DEFAULT UNDER A    DEED OF TRUST        DATED 07/17/2009.
(deed of trust or mortgage)                (date)
UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.

IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU
SHOULD CONTACT A LAWYER.

The total amount due in the notice of sale is  $254,772.41   .
(total amount due)

Your property is scheduled to be sold on    06/30/2014  at 10:00 AM
(date and time of sale)
at        BEHIND THE FOUNTAIN LOCATED IN CIVIC CENTER PLAZA, 400 CIVIC CENTER PLAZA,
POMONA CA        .
(location of sale)

However, the sale date shown on the attached notice of sale may be postponed one or more times by
the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code.  The
law requires that information about trustee sale postponements be made available to you and to the public,
as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been
postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call _ 916
-939-0772_
(telephone number for information regarding the trustee's sale)

or visit this Internet Web site address       www.nationwideposting.com  ,
(Internet website address for information regarding the sale of this property)
using the file number assigned to this case   20130202200039    Information
(case file number)
about postponements that are very short in duration or that occur close in time to the scheduled sale may
not immediately be reflected in the telephone information or on the Internet Web site.  The best way to
verify postponement information is to attend the scheduled sale.

If you would like additional copies of this summary, you may obtain them by calling   916-939-0772   .
(telephone number)

Civil Code Section 2923.3(d)(2) Revised 3/28/13

**PennyMac®**

P.O.Box 514387
Los Angeles, CA 90051-4387
(866) 545-9070
fax (866) 577-7205
NMLS # 35953

June 20, 2014

*Debt Collector* (handwritten annotation)

Ruben Serna
1510 S. New Hampshire Ave
Los Angeles, CA 90006

Loan Number:        1000030810
Property Address:   1510 S. New Hampshire Ave
                    Los Angeles, CA 90006

Dear Ruben Serna:

PennyMac Loan Services, LLC ("PennyMac"), has carefully reviewed the correspondence dated May 5, 2014, June 9, June 10, and June 12, 2014, regarding the above referenced loan.

Please be advised that the terms and provisions in your loan documents remain unchanged and in force. PennyMac will continue to service the loan in accordance with the valid, binding loan documents that you signed.

PennyMac must respectfully decline the *"Proof of Claim"* that you enclosed with your correspondence with your request to close and discharge this loan. Said documents will not fully satisfy your obligation under the terms of the *Deed of Trust* and *Note* for the loan, and is not an acceptable form of payment or an allowable transfer of property, as described under the *Deed of Trust* and the *Note* for the above-referenced loan obligation. PennyMac will not accept or honor the *"Proof of Claim."*

PennyMac *does not* recognize your proposed process as legitimate under the terms of the note and the laws of the State of California or the United States.

Enclosed are copies of documents we relied upon in reaching our decision/conclusion including the Note, Deed of Trust, Notification of Assignment of Mortgage/Deed of Trust, Truth in Lending, Notice of Assignment, Sale of Transfer of your Mortgage Loan, Welcome Letter, Payoff Statement good through June 27, 2014, and Customer Account Activity Statement since PennyMac has been servicing the loan. Please note that this statement provides pertinent information on payments received, tax and insurance payments disburse from the escrow account, and late charges assessed and paid.

Any documents or requested information not provided in this letter is due to your request being overbroad, irrelevant, or unduly burdensome request for information, or are considered to be confidential, proprietary or privileged information of PennyMac.

Review of your account confirmed Los Mitigation solicitations were mailed to you informed you to contact PennyMac to speak with one of our Loan Specialists to discuss whether you would be

This communication is from a debt collector. However, if your account is subject to pending bankruptcy proceedings or you have received a discharge in bankruptcy, this statement is for information purposes only and is not an attempt to collect a debt against you personally.



P.O.Box 514387
Los Angeles, CA 90051-4387
(866) 545-9070
fax (866) 577-7205
NMLS # 35953

Page 2
Loan Number: 1000030810
Ruben Serna

eligible for one of our mortgage assistance programs or foreclosure alternatives. Please note we did not receive the information necessary to begin a loss mitigation application. Enclosed please find copies of the modification solicitations for your review.

As you were previously advised, your loan was referred to foreclosure counsel on or about March 25, 2013. A foreclosure sale date is currently scheduled for Monday, June 30, 2014.

Lastly, please allow me to confirm that A.O.E. Law and Associates is not an authorized third party in our records.

Thank you for allowing me the opportunity to be of service. I trust this letter sufficiently addresses your concerns. In providing the above response, PennyMac is not limiting or waiving any rights or remedies it may now or hereafter have, whether arising under the loan documents, at law or in equity, all of which rights and remedies are expressly reserved.

Sincerely,

Claudia De Leon
Research Department
PennyMac Loan Services, LLC

This communication is from a debt collector. However, if your account is subject to pending bankruptcy proceedings or you have received a discharge in bankruptcy, this statement is for information purposes only and is not an attempt to collect a debt against you personally.

**PennyMac**®

P.O.Box 514387
Los Angeles, CA 90051-4387
(800) 777-4001
fax (818) 264-4505

June 20, 2014                        **PAYOFF STATEMENT**

Loan Number: 1000030810

**VERIFICATION OF PAYOFF FIGURES IS REQUIRED PRIOR TO PAYOFF. HOLD $0.00 FOR 30 DAYS TO
ALLOW CLEARANCE OF THE LAST PAYMENT RECEIVED IF PAYMENT POSTED WITHIN 15 BUSINESS
DAYS FROM THE PAYOFF STATEMENT DATE OR PROVIDE PROOF OF PAYMENT CLEARANCE AT
TIME PAYOFF FUNDS ARE SUBMITTED. IF THIS OBLIGATION IS NOT PAID IN FULL BY THIS DATE,
THEN YOU SHOULD OBTAIN FROM US AN UPDATED PAYOFF AMOUNT BEFORE CLOSING.**

| | |
|---|---|
| Figures as of: | 06-27-14 |
| Loan Is Due For: | 12-22-09 |
| Current Interest Rate: | 8.19700% |
| Per Diem Interest Amount as of  06-27-14: | $39.06 |

**PAYOFF BREAKDOWN:**

| | |
|---|---|
| Current Principal Balance: | $171,560.28 |
| Interest Due as of  06-27-14: | $64,649.80 |
| Pro Rata MIP: | $.00 |
| Assessed Unpaid Late Fees: | $72.81 |
| Assessed Unpaid NSF Fees: | $.00 |
| Escrow Advance: | $8,133.96 |
| Foreclosure Fees: | $2,385.00 |
| **Foreclosure Fees: | $840.00 |
| **Foreclosure Costs: | $425.64 |
| Foreclosure Costs: | $5,146.67 |
| Property Preservation: | $444.00 |
| **Property Preservation | $.00 |
| BPO/Appraisal: | $463.00 |
| **BPO/Appraisal: | $.00 |
| Bankruptcy Fees: | $1,600.00 |
| Recording Fee: | $33.50 |
| Release Cost: | $11.50 |
| **Total Payoff Amount as of  06-27-14:** | **$255,766.16** |

*Prepayment penalties are subject to change, based on the terms of the Note.
**Prior Servicer Corporate Advance Balance

**INSTRUCTIONS TO ESCROW:**
1. A late fee in the amount of **$72.81** may be added after the 16th of the month.
2. Funds MUST be sent via wire transfer, cashiers check. or title checks only.

**Wiring Instructions:**
PennyMac Loan Servicing LLC
ABA #026009593
Credit: 1235983182
Loan #  1000030810
Attention: Payoff Department

**Mail or Overnight Instructions:**
PennyMac Loan Servicing LLC
6101 Condor Drive
Moorpark, CA 93021
Attention: Payoff Department

To avoid any additional interest charges, funds MUST be received no later than 12:00 PM, PST.

*Attempting to Collect a debt.*

PennyMac Loan Services, LLC is attempting to collect a debt and any information obtained will be used for that
purpose.  If you received a discharge in bankruptcy, PennyMac shall only exercise its rights against the property
and shall not attempt to collect the debt from you personally.

03192013A

**PennyMac**

P.O.Box 514387
Los Angeles, CA 90051-4387
(800) 777-4001
fax (818) 264-4505

June 20, 2014                                  **PAYOFF STATEMENT**

Sent to:
Ruben Serna
1510 S New Hampshire Ave
Los Angeles CA 90006-4512

Loan Information
Loan Number: 1000030810
Borrower: Ruben Serna
Property Address: 1510 S New Hampshire Ave
                            Los Angeles CA 90006-4512

PennyMac Loan Servicing LLC ("PennyMac") reserves the right to correct any portion of this Payoff Statement at any time, and all figures shall be subject to final verification by PennyMac. Figures may be adjusted if any previous payment received is rejected by the institution on which it is drawn, and borrower/issuer of any returned item shall remain liable for said debt. In such event, this Payoff Statement shall be deemed invalid and a new Payoff Statement must be obtained from PennyMac to reflect the correct amount due and owing.

PennyMac further reserves the right to demand additional funds before or subsequent to the release of its security interest in the property to correct any error or omission in these figures made in good faith.

If the funds received is less than what is required to satisfy the loan in full, PennyMac reserves the right to return the funds with an updated Payoff Statement. Please note that the security interest will not be released and interest will continue to accrue at the per diem rate until the loan is paid in full.

INFORMATION ABOUT TOTAL DUE
To provide you with the convenience of an extended Good-Through date, the Total Amount Due may include anticipated or projected fees and costs, additional payments and/or escrow disbursements that will become due prior to the Good-Through date, but which are not yet due as of the date this Payoff Statement is issued.

ADDITIONAL INFORMATION
The amount indicated in this Statement is subject to change for various reasons, including but not limited to the following:

- We may have posted a recently submitted payment. (Please do not place a stop payment on any check)
- A fee may be assessed if a payment is returned unpaid by your financial institution for any reason
- Additional or anticipated fees and costs may be incurred during the Good-Through date relating to collection, foreclosure, bankruptcy, or other defaults on your loan
- Adjustments may be required to reflect disbursements made by, or payments owed to, your prior lender if the servicing of your loan was recently transferred to PennyMac.

If you are set up on Automated Clearing House (ACH) you may cancel by sending us a written notice at least 15 days prior to your next due date. Alternatively, you must cancel the ACH service by calling (800) 777-4001and speaking to a Loan Specialist at least 3 business days prior to your scheduled payment date in order to avoid a draft from occurring prior to payoff.

Should you have any questions, please contact our Loan Specialist at 1-800-777-4001, Monday through Friday, between 7:00 A.M. to 6:00 P.M. PST, 7:00AM to 11:00AM PST on Saturday.

*Attempting to Collect A debt.*

**PennyMac Loan Services, LLC is attempting to collect a debt and any information obtained will be used for that purpose. If you received a discharge in bankruptcy, PennyMac shall only exercise its rights against the property and shall not attempt to collect the debt from you personally.**

03192013A

**PennyMac®**

P.O.Box 514387
Los Angeles, CA 90051-4387
(866) 545-9070
*fax* (866) 577-7205

March 3, 2014

*This Communication is from a Debt. Collector.*

Ruben Serna
1510 S New Hampshire Ave
Los Angeles, CA 90006

Loan Numbers:           1000030810
Property Address:       1510 S New Hampshire Ave
                        Los Angeles, CA 90006

Dear Ruben Serna:

This letter is in response to correspondence received February 10, 2014, and February 15, 2014, (the "Letter"), which was sent to PennyMac Loan Services, LLC ("PennyMac").

Please be assured, our records do reflect the active Chapter 7 Bankruptcy on your account; therefore, this letter is for informational purposes only and not an attempt to collect a debt against you personally.

As you may be aware, a QWR under 12 U.S.C. §2605(e)(1)(B) is a written correspondence which includes a statement of specific reasons why you believe the account is in error and which provides sufficient detail to allow the servicer of the loan to review the account to determine whether there were errors made in connection with the account, and to either make appropriate corrections where errors were made or to explain to you why the servicer believes the account is accurate.

A QWR is not a vehicle for a consumer to obtain confidential information concerning the lender's business practices, its relationship with government sponsored entities, its mortgage servicing and accounting computer systems, trade secrets or other proprietary information.

You are further advised that PennyMac, its officers, employees, agents, investors, and vendors, do not Consent or Agree to your purported, unenforceable and invalid correspondence and *"Proof of Claim" and "Default of Provisions."* Your demands and/or offer in terms are hereby rejected in their entirety, and are not otherwise acknowledged or considered legitimate or lawful. PennyMac *does not* recognize your proposed process as legitimate under the terms of the note and the laws of the State of California or the United States. You are further reminded that the obligations under the terms of the duly executed Note and Mortgage are binding, valid and fully enforceable at law.

The servicing of your mortgage loan transferred from CitiMortgage to PennyMac Loan Services, LLC effective January 14, 2011, with a payment due of December 22, 2009. A thorough review of the information provided by CitiMortgage confirms the transferred due date was accurate. Please be aware that the terms and provisions of the loan documents that you signed remain unchanged and in full effect and PennyMac will continue to service the loan in accordance with the valid binding loan documents.

This communication is from a debt collector. However, if your account is subject to pending bankruptcy proceedings or you have received a discharge in bankruptcy, this statement is for informational purposes only and is not an attempt to collect a debt against you personally.

**PennyMac**

P.O.Box 514387
Los Angeles, CA 90051-4387
(866) 545-9070
*fax* (866) 577-7205

Page 2
Loan Number: 1000030810
Ruben Serna

The owner/investor for the above referenced loan is PennyMac Corp., whose address is 6101 Condor Drive, Suite 300, Moorpark, CA 93021. However, at their request all loan inquires should be directed to the current loan servicer, PennyMac Loan Services, LLC. Our contact information is as follows:

| Payment Address | Correspondence Address |
|---|---|
| P.O. Box 30597 | P.O. Box 514387 |
| Los Angeles, CA 90051 | Los Angeles, CA 90051 |

Fax # 866-577-7205

Our records confirm the loan was referred to foreclosure on or about March 25, 2013. PennyMac processes all foreclosures in accordance to State and Federal Law. As of the date of this letter, a sale date has not been scheduled for the above subject property.

Any documents or requested information not provided in this letter is due to the request being too broad to determine specific information needed, or are considered to be proprietary information of PennyMac.

If you would like to view the original Note, you may make arrangements to come to PennyMac's offices in California, to do so. Please contact PennyMac's Customer Retention Group to schedule an appointment at (866) 545-9070.

In addition, please be assured, your loan has been removed from our telephone calling system. However, all other notices, outlined under the terms of your loan documents, will continue as required.

In providing the above response, PennyMac is not limiting or waiving any rights or remedies it may now or hereafter have, whether arising under the loan documents, at law or in equity, all of which rights and remedies are expressly reserved.

Sincerely,

Claudia De Leon
Research Department
PennyMac Loan Services, LLC

Enclosures

This communication is from a debt collector. However, if your account is subject to pending bankruptcy proceedings or you have received a discharge in bankruptcy, this statement is for information purposes only and is not an attempt to collect a debt against you personally.

# PennyMac

P.O.Box 514387
Los Angeles, CA 90051-4387
(866) 545-9070
*fax* (866) 577-7205

December 23, 2013

*[handwritten: This Communication is from a Debt Collector.]*

Ruben Serna
1510 S New Hampshire Ave
Los Angeles, CA  90006

Loan Number:          1000030810
Property Address:     1510 S New Hampshire Ave
                      Los Angeles, CA  90006

Dear Ruben Serna:

This letter is in response to your correspondence received November 25, 2013, addressed to PennyMac Loan Services, LLC ("PennyMac"), regarding the above referenced loan.

Review of your account confirmed on November 22, 2013, you spoke to PennyMac's Customer Service Department and were informed the above loan was not eligible for modification review because the property had an impending foreclosure sale scheduled within seven business days. .

PennyMac understands the challenging financial environment that exists today and its impact on a borrower's ability to pay the mortgage loan.  Helping our customers to effectively manage through these financial hardships and maintain ownership of their home is our main priority.  We have placed the foreclosure on hold to allow your loan to be reviewed for a modification.  Please contact our office at (866) 545-9070 and one of our experienced Loan Specialists will review the numerous programs that we offer to determine which program may assist with the mortgage loan.  Please be advised, in order to review your situation for assistance, it is imperative that you call us so we may obtain the necessary information.  As of the date of this letter, your loan is due for the December 22, 2009 mortgage payment.

If you have additional questions please call our Loan Modification Department at (866) 545-9070. Our office hours are 7:00 AM to 6:00 PM, Monday through Friday, 7:00 AM to 11:00 AM Saturday PST.

Sincerely,

*[signature: Claudia De Leon]*
Claudia De Leon
Research Department
PennyMac Loan Services, LLC

This communication is from a debt collector  However, if your account is subject to pending bankruptcy proceedings or you have received a discharge in bankruptcy, this statement is for information purposes only and is not an attempt to collect a debt against you personally.



**PennyMac**

Loan Services
P.O. Box 514387
Los Angeles, CA 90051-4387
Tel. No. (866) 545-9070
Fax No. (818) 264-4505

October 11, 2012                    **PAYOFF STATEMENT**

Sent to: Jack Harriman & Assoc.
          Fax 626 256 8887

Loan Information
Loan number 1000030810
Borrower: Ruben Serna
Property Address: 1510 S New Hampshire Ave
          Los Angeles, CA 90006-4512

PennyMac Loan Servicing LLC ("PennyMac") reserves the right to correct any portion of this Payoff Statement at any time, and all figures shall be subject to final verification by PennyMac. Figures may be adjusted if any previous payment received is rejected by the institution on which it is drawn, and borrower/issuer of any returned item shall remain liable for said debt. In such event, this Payoff Statement shall be deemed invalid and a new Payoff Statement must be obtained from PennyMac to reflect the correct amount due and owing.

PennyMac further reserves the right to demand additional funds before or subsequent to the release of its security interest in the property to correct any error or omission in these figures made in good faith.

If the funds received are less than what is required to satisfy the loan in full, PennyMac reserves the right to return the funds with an updated Payoff Statement. Please note that the security interest will not be released and interest will continue to accrue at the per diem rate until the loan is paid in full.

Should you have any questions, please contact our Loan Specialist at 1-866-601-3518, Monday through Friday, between 7:00 A.M. to 6:00 P.M. PST, 7:00 A.M to 11:00 A.M PST on Saturday.

**VERIFICATION OF PAYOFF FIGURES IS REQUIRED PRIOR TO PAYOFF. HOLD $1,456.16 (LAST PAYMENT) FOR 30 DAYS TO ALLOW CLEARANCE, OR PROVIDE PROOF OF CLEARANCE AT THE TIME PAYOFF FUNDS ARE SUBMITTED.**

| | |
|---|---|
| Figures as of: | 10/31/12 |
| Loan Is Due For: | 12/22/09 |
| Current Interest Rate: | 8.19700% |
| Per Diem Interest Amount as of : 10/31/12 | $39.06 |

| PAYOFF BREAKDOWN: | |
|---|---|
| Current Principal Balance: | $171,560.28 |
| Interest Due as of: 00/00/00 | $41,368.06 |
| Assessed Unpaid Late Fees: | $72.81 |
| Escrow Advance: | $7,020.17 |
| Foreclosure Fees: | $1,635.00 |
| **Foreclosure Fees: | $840.00 |
| Foreclosure Costs: | $4,297.67 |
| **Foreclosure Costs: | $689.64 |
| Property Preservation: | $55.00 |
| **Property Preservation: | $27.00 |
| Broker Price Opinion: | $151.50 |
| **Broker Price Opinion: | $84.00 |
| BK Fees: | $550.00 |
| Recording Fee: | $34.00 |
| Release Cost: | $11.00 |
| Total Payoff Amount as of  10/31/12 | $228,396.13 |

*Prepayment penalties are subject to change, based on the terms of the Note.
**Prior Servicer Corporate Advance Balance.

**INSTRUCTIONS TO ESCROW:**
1. A late fee in the amount of $72.81 may be added after the 16th of the month.
2. Funds MUST be sent via wire transfer, cashiers check, or title checks only.

**Wiring Instructions:**
PennyMac Loan Servicing LLC
ABA #026009593
Credit: 1235983182
Loan #1000030810
Attention: Payoff Department

**Mail or Overnight Instructions:**
PennyMac Loan Servicing LLC
6101 Condor Drive
Moorpark, CA 93021
Attention: Payoff Department

To avoid any additional interest charges, funds MUST be received no later than 12:00 PM, PST.

PennyMac Loan Servicing LLC is attempting to collect a debt and any information obtained will be used for that purpose. If you received a discharge in bankruptcy, PennyMac shall only exercise its rights against the property and shall not attempt to collect the debt from you personally.

*PennyMac is Attempting to Collect A debT.*



*Correspondence unit*

**Notice Date:** June 13, 2014

**Loan Number:** 1000030810
**Property Address:**
1510s New Hampshire Ave
Los Angeles CA 90006

Ruben Serna
1510 S New Hampshire Ave
Los Angeles CA 90006

---

**REGARDING YOUR LOAN**

At PennyMac Loan Services, LLC ("PennyMac"), we strive to provide our customers with timely communications and best-in-class customer service. The purpose of this letter is to inform you that we have received your written request for research on the above-referenced loan.

**WHY YOU RECEIVED THIS NOTICE**

We are currently conducting a full review of your loan as it relates to your inquiry. Upon completion of the review, a response letter will be mailed to you detailing our findings and action taken.

*If your inquiry is in reference to a payment dispute, PennyMac will not furnish adverse information to any consumer agency regarding the disputed payment for 60 days.*

**WHAT YOU SHOULD DO**

This letter does not require any action to be taken on your part. It is simply a courtesy notice about the status of your inquiry.

**PENNYMAC APPRECIATES YOUR BUSINESS**

If you have additional questions, please call our Customer Service Department toll free at (800) 777-4001. Our experienced Loan Specialists are available from 6:00 AM to 6:00 PM PT, Monday through Friday, and 7:00 AM to 11:00 AM PT on Saturday.

*"This communication is from a debt collector."*

---

We are required by law to inform you that this communication is from a debt collector and any information obtained will be used for that purpose. However, if your mortgage loan is subject to pending bankruptcy or you have received a discharge in bankruptcy, this letter is for informational purposes and is not an attempt to collect a debt against you personally.

| **Toll Free: (800) 777-4001** | **Website: www.PennyMacUSA.com** | **Payments:** | **Correspondence:** |
|---|---|---|---|
| M – F 6:00am – 6:00pm Pacific<br>Sat 7:00am – 11:00 am Pacific<br>Toll Free Fax: (866) 577-7205 | **Secure Messaging Online:**<br>Create an account and/or log in to<br>http://www.PennyMacUSA.com, then look for<br>the Secured Message Center to<br>communicate with us securely. | **Standard Address:**<br>P.O. Box 30597<br>Los Angeles, CA 90030-0597<br>**Overnight Address:**<br>6101 Condor Drive<br>Moorpark, CA 93021 | Attn: Correspondence Unit<br>P.O. Box 514387<br>Los Angeles, CA 90051-4387 |

CorrQ_AckLetter




**PennyMac**®

P.O. Box 514387
Los Angeles, CA 90051-4387
(800) 777-4001
fax (866) 577-7205

June 13, 2014


Ruben Serna
1510 S. New Hampshire Ave
Los Angeles, CA 90006


| | |
|---|---|
| Borrower: | Ruben Serna |
| Loan Number: | 1000030810 |
| Property Address: | 1510 S. New Hampshire A |
| | Los Angeles, CA 90006 |

To Whom It May Concern:


PennyMac Loan Services, LLC is in receipt of your request for the investor/owner of the referenced loan.

As requested, the owner/investor is PennyMac Corp., whose address is 6101 Condor Drive, Suite 300, Moorpark, CA 93021. However, at their request all loan inquiries should be directed to the current loan servicer, PennyMac Loan Services, LLC. Our contact information is as follows:

| Payment Address | Correspondence Address |
|---|---|
| P.O. Box 30597 | P.O. Box 514387 |
| Los Angeles, CA 90051 | Los Angeles, CA 90051 |

Fax # 866-577-7205

If your correspondence included a request for additional documentation and/or research, please be assured we are in the process of conducting a full review of the loan as it relates to your inquiry. Upon completion of the review, a response letter will be mailed to you detailing our findings and action taken.

If you have additional Questions, please call our Customer Service Department toll free at (800) 777-4001. Our Customer Service Representatives are available from 6:00 AM to 6:00 PM PT, Monday through Friday, 7:00 AM to 11:00 AM PT on Saturday.

Sincerely,                      *No signature*

Loan Administration
PennyMac Loan Services, LLC

This communication is from a debt collector. However, if your account is subject to pending bankruptcy proceedings or you have received a discharge in bankruptcy, this statement is for information purposes only and is not an attempt to collect a debt against you personally.

*This communication is from a debt collector.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

# EXHIBIT D

21

SERNA VS NDEX WEST, LLC

**This page is part of your document - DO NOT DISCARD**



# 20091150891



**Pages:**
**0017**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**07/28/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 61.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 61.00 |



**LEADSHEET**



200907280140012

00000950344



002231183

**SEQ:**
**08**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t79

Recording Requested By:
**Citicorp Trust Bank, fsb**

Return To:
**Citicorp Trust Bank, fsb
Doc Processing Dept, MS 121
1000 Technology Drive
O'Fallon, MO  63368-2240**

07/28/2009

*20091150891*

Prepared By:
**Citicorp Trust Bank, fsb
2450 Fire Mesa Street
Suite 110
Las Vegas, NV  89128**

——————————————— [Space Above This Line For Recording Data] ———————————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **July 17, 2009**
together with all Riders to this document.

**(B) "Borrower"** is **RUBEN SERNA, A MARRIED MAN AS HIS SOLE AND SEPERATE PROPERTY**

Borrower's address is **PO BOX 151071, Los Angeles, CA  90015**
. Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is **Citicorp Trust Bank, fsb**

Lender is a **Federal Savings Bank**
organized and existing under the laws of **Delaware**

**001120935085**

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3005  1/01
Wolters Kluwer Financial Services
VMP®-6(CA) (0711)
Page 1 of 15                    Initials:



CitiMortgage 3.2.24.05 V2

*3*

Lender's address is **4500 Linden Hill Drive, Wilmington, DE  19808**

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is **Verdugo Trustee Service Corporation**

**(E) "Note"** means the promissory note signed by Borrower and dated **July 17, 2009**
The Note states that Borrower owes Lender **One Hundred Seventy One Thousand Five Hundred Sixty & 28/100**
                                                                                                          Dollars
(U.S. $ **171,560.28**             ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **07/22/2029**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] Exhibit "A" |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

001120935085
**CALIFORNIA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                               Form 3005   1/01
VMP®-6(CA) (0711)                                      Page 2 of 15
                                                                                          CitiMortgage 3.2.24.05 V2

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County** ————————————————— of **Los Angeles** ——————————————— :

[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

**EXHIBIT "A"**

Parcel ID Number:                                                      which currently has the address of
**1510 S NEW HAMPSHIRE AVE**                                              [Street]
**LOS ANGELES**                                         [City], California **90006-4512**     [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

001120935085
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005   1/01
VMP®-6(CA) (0711)                                    Page 3 of 15
                                                                                       CitiMortgage 3.2.24.05 V2

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

*6*

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

001120935085
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-6(CA) (0711)                                      Page 5 of 15         Initials                Form 3005   1/01

CitiMortgage 3.2.24.05 V2

7

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

*9*

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

001120935085
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-6(CA) (0711)                        Page 8 of 15                    Initials: ___

Form 3005  1/01

CitiMortgage 3.2.24.05 V2

*10*

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

001120935085

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3005   1/01

VMP ®-6(CA) (0711)       Page 10 of 16     Initials:      CitiMortgage 3.2.24.05 V2

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

001120935085
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-6(CA) (0711)                                    Page 11 of 16          Initials: 

Form 3005   1/01

CitiMortgage 3.2.24.05 V2

*13*

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

001120935085
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-6(CA) (0711)          Page 12 of 15          Form 3005  1/01
CitiMortgage 3.2.24.05 V2

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

001120935085
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3005   1/01
VMP®-6(CA) (0711)                                    Page 13 of 15        Initials:
CitiMortgage 3.2.24.05 V2

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____
Flavio A. Troslaviño
NOTary Public

_____

_____ (Seal)
                              -Borrower
RUBEN SERNA
(Sign Original Only)

001120935085
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-6(CA) (0711)                    Page 14 of 15

Form 3005   1/01

CitiMortgage 3.2.24.05 V2

*tb*

State of California
County of *Los Angeles*                                  } ss.

On *July 17th 2009*          before me, *Flavio A. Traslavina Notary Public*
                                                    , personally appeared

*RUBEN SERNA*
                                                                    , who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF
PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____(Seal)



FLAVIO A. TRASLAVINA
COMM. #1767602
NOTARY PUBLIC • CALIFORNIA
ORANGE COUNTY
Comm. Expires Sep. 29, 2011

001120935085
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005   1/01
VMP®-6(CA) (0711)                          Page 15 of 15          Initials:          CitiMortgage 3.2.24.05 V2

**LEGAL DESCRIPTION**
**EXHIBIT "A"**

17

ALL THAT PARCEL OF LAND IN LOS ANGELES COUNTY, STATE OF CALIFORNIA, AS DESCRIBED IN DEED DOC
# 06-0830331, ID# 5075-002-013, BEING KNOWN AND DESIGNATED AS:

THE WEST 82.5 FEET OF LOT 18 OF THE BUHLER TRUST IN THE CITY OF LOS ANGELES, COUNTY OF LOS
ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 13 PAGES 85 INCLUSIVE OF MISC.
RECORDS OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.
5075-002-013

CLTA Preliminary Report Form - Modified (11/17/06)

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

JAN 1 6 2014

*Dean C. Logan* REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

# NOTE

| July 17, 2009 | Compton | California |
|---|---|---|
| [Date] | [City] | [State] |

### 1510 S NEW HAMPSHIRE AVE, LOS ANGELES, CA 90006-4512

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 171,560.28 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Citicorp Trust Bank, fsb

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

*Interest will be charged on unpaid principal and shall accrue daily until the full amount of Principal has been paid based* upon a yearly rate of 8.19749 %. Interest will be computed on the basis of a 360 day year.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note. Because interest accrues daily, if my monthly payment is not received by Lender by the date such payment is due, interest will continue to accrue until the day such payment is received by Lender.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my first monthly payment on August 22, 2009 and on that day each month thereafter. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest computed to the date of payment before Principal. If, on July 22, 2029 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at CitiMortgage, Inc., 1000 Technology Drive, O'Fallon, MO 63368-2240 or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,456.16

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

Application No. 001120935085   Account No. 1120935085

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Citicorp Trust Bank, fsb

Modified Form 3200 1/01

400018 7/2006
Page 1 of 4                    Initials:

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees (unless the property is located in West Virginia).

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor (and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below) if the property is located in Virginia). "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Application No. 001120935085      Account No. 1120935085

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Citicorp Trust Bank, fsb                                            Page 2 of 4
400018 7/2006

Modified Form 3200 1/01
Initials

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. [The following provision applies to ALASKA loans only.]

NOTICE OF OTHER REMEDIES
To the extent set forth in this Note and any Rider attached hereto (a) the mortgagor or trustor ("Borrower") is personally obligated and fully liable for all amounts due under this Note, and (b) the holder hereof has the right to sue on this Note and obtain a personal judgment against the Borrower for satisfaction of all amounts due under this Note either before or after a judicial foreclosure, under Alaska Statutes §§ 09.45.170 through 09.45.220, of the deed of trust which secured this Note.

[The following provision applies to FLORIDA loans only.]
DOCUMENTARY TAX
The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

[The following provision applies to NEW HAMPSHIRE loans only.]
ATTORNEYS' FEES
Pursuant to New Hampshire Revised Statutes Annotated § 361-C:2, in the event that Borrower shall prevail in (a) any action, suit or proceeding, brought by Lender, or (b) an action brought by Borrower, reasonable attorneys' fees shall be awarded to Borrower. Further, if Borrower shall sucessfully assert a partial defense or set-off, recoupment or counterclaim to an action brought by Lender, a court may withhold from Lender the entire amount or such portion of its attorneys' fees as the court shall consider equitable.

Application No. 001120935085        Account No. 1120935085

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Citicorp Trust Bank, fsb                    Page 3 of 4                    Modified Form 3200 1/01
400018 7/2006

[The following provision applies to VERMONT loans only.]

NOTICE TO CO-SIGNER

YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____        _____ (Seal)
                                          RUBEN SEKNA                        -Borrower

_____

                                          *(Sign Original Only)*

Pay to the Order of:
                    CitiMortgage, Inc

Without Recourse

Citicorp Trust Bank, FSB
Paul DeGruccio, Vice President

Application No. 001120935085        Account No. 1120935085

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Citicorp Trust Bank, fsb          Page 4 of 4                    Modified Form 3200 1/01
400018 7/2006

**Governing Law**
**Addendum to Note**

THIS GOVERNING LAW ADDENDUM TO NOTE (the "Addendum") is made this <u>17th</u> day of <u>July, 2009</u>, and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned ("Borrower"), in favor of <u>Citicorp Trust Bank, fsb</u> ("Lender") and dated the same date as this Addendum (the "Note"). The Note is secured by a mortgage/deed of trust/security agreement (the "Security Instrument") in favor of Lender dated the same date as this Addendum.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

1.    Governing Law.

This Note will be governed by United States federal law and, to the extent United States federal law is inapplicable, then by the laws of the State of Delaware; except that, with regard to the perfection and enforcement of Lender's security interest in the Property, the Note and Security Instrument will be governed by the law of the state where the Property is located.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Governing Law Addendum to Note.

_____ (Seal)
RUBEN SERNA                         -Borrower

*(Sign Original Only)*

# TIMELY PAYMENT REWARDS ADDENDUM TO NOTE

THIS TIMELY PAYMENT REWARDS ADDENDUM TO NOTE is made this _____17th_____ day of _July_____, _2009_ ,and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned ("Borrower"), in favor of __Citicorp Trust Bank, fsb_____ ("Lender") and dated the same date as this Addendum (the "Note"). The Note is secured by a security instrument, as modified or amended, in favor of Lender dated the _____17th_____ day of _July_____, _2009_ (the "Security Instrument").

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

1.    TIMELY PAYMENT REWARDS RATE REDUCTION
      Borrower has agreed to pay the rate of interest set forth in Section 2 of the Note (the "Note Rate") until the full amount of principal has been paid. However, if on any one of the second, third, or fourth anniversaries of the scheduled due date of the first full installment payment due under the Note (each, an "Anniversary Date") Borrower has demonstrated a Good Payment History, Lender agrees to decrease the Note Rate by _____One_____ percentage point ( _1.0_ %). Borrower will be deemed to have demonstrated a "Good Payment History" if Borrower: (a) has made each of the most recent 24 consecutive monthly payments under the Note and Security Instrument before the date the next payment was due; and (b) has never been late by 3 months or more in making any monthly payments due under the Note. If Borrower demonstrates a Good Payment History, the new Note Rate will take effect on the first day of the earliest Anniversary Date on which Borrower has demonstrated a Good Payment History ("Rate Reduction Date"). Beginning with Borrower's first monthly payment after the Rate Reduction Date, Borrower will pay the new amount as the monthly payment until the Maturity Date. Lender will decrease Borrower's Note Rate only one time during the term of the loan, provided Borrower demonstrates a Good Payment History on any one of the second, third, or fourth Anniversary Dates.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Timely Payment Rewards Addendum to Note.

_____ (Seal)
RUBEN SERNA                                    -Borrower

*(Sign Original Only)*

GF400024 (05/01)    Application No. 001120935085    Account No. 1120935085

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☒ )

RUBEN SERNA

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

1. NDex West LLC.
2. Pennymac Loan services
3. Citimortgage, Inc.

**(b) County of Residence of First Listed Plaintiff** Los Angeles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**County of Residence of First Listed Defendant** ADDISON TEXAS
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

RUBEN SERNA
1510 S. New Hampshire Ave.
Los Angeles, CA. 9000C

**Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

NDEX WEST LLC.
15000 SURVEYOR BLVD. Suite #500
ADDISON, TEXAS 75001-9013

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☒ 3. Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government Defendant
☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ UNDETERMINED

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

15 U.S.C. 1692 et. seq. Violation of FDCPA

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 210 Land Condemnation | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | ☐ 230 Rent Lease & Ejectment | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

CV14-4985

**FOR OFFICE USE ONLY:**   Case Number:

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Orange | Southern |
|  | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | | |
|---|---|---|
| ☐ Yes  ☒ No | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|  |  | ☐ NO. Continue to Question B.2. |
| If "no, " skip to Question C. If "yes," answer Question B.1, at right. | **B.2.** Do 50% or more of the defendants who reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
|  |  | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | | |
|---|---|---|
| ☐ Yes  ☒ No | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|  |  | ☐ NO. Continue to Question C.2. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
|  |  | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |

| **D.1. Is there at least one answer in Column A?** | **D.2. Is there at least one answer in Column B?** |
|---|---|
| ☐ Yes  ☒ No | ☐ Yes  ☒ No |
| If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question E, below, and continue from there.<br>If "no," go to question D2 to the right. ➡ | If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br>Enter "Eastern" in response to Question E, below.<br>If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | *WESTERN* |

| QUESTION F: Northern Counties? | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes | ☒ No |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court?**   ☒ NO   ☐ YES

    If yes, list case number(s):

**IX(b). RELATED CASES:** Is this case related (as defined below) to any cases previously filed **in this court?**   ☒ NO   ☐ YES

    If yes, list case number(s):

Civil cases are related when they:

    ☐ A. Arise from the same or closely related transactions, happening, or event;

    ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

    ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

    Check all boxes that apply.  That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT)** X _(signature)_   DATE: 6/26/2014

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended.  Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |